Argued May 7, affirmed as modified May 31, 1973

GARRETT, *Appellant, v.* GARRETT, *Respondent.*

510 P2d 591

Norman F. Webb, Salem, argued the cause for appellant. With him on the brief was John P. Youngers, Salem.

No appearance for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C.J.

The plaintiff, James Garrett, appeals from that portion of a decree of divorce awarding his former spouse, the party adjudged at fault, $100 per month alimony.[1] The Garretts were married in 1959. At the time of the decree in October of 1972, they had no property of any consequence. James Garrett was earning something under $10,000 per year as a carpenter. The custody of the only child of the parties, a daughter aged 12, was awarded to the father. Mrs. Garrett did not appear at the hearing except through counsel. She had a long history of mental problems predating the marriage, but the evidence indicates that she was

---

[1] As is pointed out later in this opinion, this case was filed prior to the effective date of the 1971 amendments to the dissolution-of-marriage statutes, but tried subsequent thereto. The issue of whether the "old" or "new" law should apply is not raised here.

never declared incompetent, and that she was institutionalized only once for a period of approximately four and one-half months. Pursuant to stipulation, a psychiatrist's report was introduced into evidence. It stated:

"I am writing to you concerning Vola Garrett at the request of Mr. Norman Webb, her husband's attorney, and with the consent of her attorney, Mr. Bruce Williams. Mrs. Garrett was a patient at Oregon State Hospital from August 10, 1971, to December 31, 1971 because of an exacerbation of a mental illness which had been present since her mid teens. She has a chronic undifferentiated schizophrenic reaction which is manifested by disorganization of her thought patterns, loss of motivation, depression and a lack of self confidence.

"Gradually with tranquilizers and a supportive milieu Mrs. Garrett regained her ability to organize her ideas and to cope with the routines of daily life. At the time of leaving the hospital she was employed as a clerk at a dress store in town and apparently her performance was adequate. I considered her improved and competent at the time she left the hospital but her long term prognosis is rather poor considering the length and severity of her illness. I feel certain the stress of marriage and maternal demands were taxing to her and the relief from this responsibility may be beneficial to the relief of her symptoms. I do believe that Mrs. Garrett is a concerned mother and should be allowed visitation rights with her child.

"As of this date I have not seen Mrs. Garrett since she left the hospital so my evaluation of her is based on observations made entirely during the course of her hospitalization."

The judge in his decree which, among other things, ordered Mr. Garrett to pay $100 per month alimony to Mrs. Garrett stated:

"* * * [D]efendant has a history of mental

illness and there are implications arising therefrom which affect her ability to keep steady employment —she should therefore have assistance towards her support and maintenance * * *."

This case was filed under what we have previously described as the "old" divorce law, former ORS ch 107, but tried after the effective date of what we have previously described as the new "no-fault" law, ORS ch 107. *See, Morgan v. Morgan,* 13 Or App 14, 507 P2d 409, Sup Ct *review denied* (1973).

Mr. Garrett contends no alimony should have been awarded because (1) there were no "unusual circumstances" justifying an award of alimony to the party at fault, (2) the decree failed to set out special findings of unusual circumstances as required by former ORS 107.100 (1) (c),[2] his right to such findings having been preserved by virtue of Oregon Laws 1971, ch 280, sec 29, p 396, which reads:

"(3) When a domestic relations suit is pending on the effective date of this Act, a *right accrued* under a law repealed hereby is not impaired and the court shall grant to a party seeking to enforce the accrued right the relief to which the party is entitled." (Emphasis supplied.),

and (3) that if alimony was properly allowed, it should be restricted in time.

We are not persuaded by his first two contentions. We have previously held that questionable employability may constitute an unusual circumstance justifying the payment of alimony to the party at fault.

[2] Former ORS 107.100 (1) (c) provided in pertinent part:

"* * * [P]rovided that in case recovery from the party not at fault is allowed, the decree must contain special findings of the facts constituting the unusual circumstances * * *."

*See, Morgan v. Morgan,* supra. Under the "no-fault" law special findings are not required unless requested. ORS 107.105 (1) (c); *see, Jacobson and Jacobson,* 13 Or App 152, 509 P2d 450 (1973). Assuming, *arguendo,* that the requirement for special findings rises to the dignity of "accrued right," Oregon Laws 1971, ch 280, sec 29, p 396, we think the above-quoted portion of the decree of the trial judge, although not expressed in great detail, is a sufficient special finding of fact to meet the requirement of former ORS 107.100 (1) (c).

■ At the time of the divorce Mrs. Garrett was in her mid-30's. While the psychiatric report indicated that her prognosis was not good, it also indicated that her condition might well improve as a result of freedom from the responsibilities of marriage. The record further indicates that she was competent and employable at the time of the hearing. While she probably will undergo a period of adjustment, it appears more likely than not that in so far as we can anticipate the future she will be able to make her own way so long as she is not encumbered with responsibilities for others.

Under all of the circumstances of this case we find, as we did in *Wright and Wright,* 13 Or App 101, 508 P2d 829 (1973), *Bullock v. Bullock,* 10 Or App 578, 500 P2d 490, Sup Ct *review denied* (1972), and *Bohanan v. Bohanan,* 6 Or App 141, 487 P2d 113 (1971), that alimony for a limited period—here $100 per month for two years from the date of the decree—is more appropriate than alimony for an unlimited period.

Affirmed as modified.